IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:18-CV-114-FL

RADOSLAW ZEGLINSKI, individually )
and as attorney in fact; HEIRS OF )
KATARZYNA ZIENKIEWICZ; )
MIECZYSLAW ZIENKIEWICZ; )
CELINA ZEGLINSKA, and )
PRZEMYSLAW ZEGLINSKI, )
)
        Plaintiffs, )
)
   v. )
)
DONNA POSEY PAZIUK, also known as )
Donna Posey; MATTHEW THOMPSON, )          ORDER
Individually and as Attorney for Decedent )
George Paziuk; ANTHONY A. SAFFO, )
Individually and as Attorney for Decedent )
George Paziuk, and as Executor of Paziuk )
Estate, and Trustee of the George Paziuk )
Revocable Trust, and as Trustee of the )
Void or Voidable George Paziuk Marital )
Trust; BRED SCHARD CO., Trustee of )
George Paziuk Revocable Trust; and )
LAWRENCE S. CRAIGE, Guardian of the )
Estate of George Paziuk, )
)
        Defendants. )

Plaintiffs, citizens and residents of Poland,[1] are beneficiaries of the estate of George Pazuik

("Paziuk"), a relative who died April 20, 2015, in Wilmington, North Carolina. Proceeding pro se,

they bring a variety of claims in complaint filed December 3, 2018, against Paziuk's widow, Donna

---

[1]     On November 13, 2018, plaintiff Radoslaw Zeglinksi filed notice with the court, informing the court that plaintiff Zatarzyna Zienkiewicz had died on October 15, 2018.

Posey Paziuk ("Posey") and Bret Schardt ("Schardt"), other beneficiaries of the estate, together with three attorneys, Matthew Thompson ("Thompson"), a practitioner with Ward and Smith, P.A., Anthony A. Saffo ("Saffo"), of the Saffo Law Firm, P.C., and Lawrence S. Craige ("Craige"), of Craige & Fox, PLLC. These Wilmington, North Carolina based practitioners were involved in the creation, maintenance, and/or settlement of the complained about estate. A myriad of motions are now before this court, including defendants' multiple motions to dismiss and plaintiffs' motions for entry of default.

## STATEMENT OF THE CASE

While the complaint was not filed until December 3, 2018, the genesis of this case on the court's docket relates back to June 26, 2018, when plaintiff Radoslaw Zeglinski filed for leave to proceed in forma pauperis (which motion was rendered moot by plaintiff submitting the appropriate fees). Plaintiffs' claims spring from dispute concerning settlement of the Paziuk estate, particularly regarding distribution of the George Paziuk Revocable Trust ("revocable trust"). Plaintiffs accompanied their complaint with a plethora of documentary evidence ranging from documents governing the Paziuk estate, to correspondence between plaintiffs and defendants, to state-court orders regarding Paziuk and the estate.

Each defendant has raised for decision a motion to dismiss. Defendants Saffo, Thompson, and Posey separately move pursuant to Federal Rule of Civil Procedure 12(b)(6) for dismissal arguing plaintiffs have failed to state a claim and that, if a claim is stated, which they collectively deny, it is for reformation of a revocable trust, which is barred by the statute of limitations. Defendants Craige and Schardt rely on unique grounds for dismissal while jointly maintaining that plaintiffs' claims are barred by the statute of limitations and statute of repose, also pursuant to Rule

12(b)(6). All defendants, save Posey, argue they have received insufficient service of process, with defendants Saffo, Thompson, and Craige moving for dismissal of plaintiffs' complaint pursuant to Rule 12(b)(5) on said basis.

Each defendant relies on personal affidavit, with defendants Thompson and Craige also submitting affidavits of assistants that work at their respective law firms. Defendant Craige also relies on January 31, 2013 state court order modifying the guardianship of Paziuk, removing guardianship of Paziuk's person, but maintaining defendant Craige as guardian of Paziuk's estate, (Jan. 31, 2013 order (DE 50-1) at 4), as well as final account submitted to state court for the guardianship estate of Paziuk, (DE 50-2). Defendant Schardt relies on his renunciation of right to serve as a co-trustee of the revocable trust, as was filed in state court. (DE 66-1).

On February 28, 2019, plaintiffs moved for entry of default against defendants Craige and Schardt pursuant to Rule 55(a). Twelve days later, discovery was stayed pending the court's address of the instant motions to dismiss submitted at that time. Nine days later, Defendant Craige has moved for leave to file response to complaint, and defendant Schardt also seeks an extension of time to file answer. Plaintiffs filed response in opposition to defendants Saffo, Thompson, and Posey's motions to dismiss. The rest of defendants' motions have, however, not been responded to.

## STATEMENT OF THE FACTS

Unwinding of the facts starts with creation of the revocable trust. The issues disputed came to life upon Paziuk's death. The court's summary of pertinent events, from the trust's creation to Paziuk's death, rests on plaintiffs' complaint and documents appropriately considered.[2]

---

[2] In reviewing a complaint under Rule 12(b)(6), the court "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted). The court may also "take judicial notice of matters of public record." Id.; see also Lolavar v. de Santibanes, 430 F.3d

**March 26, 1998: Revocable trust created by Pazuik**

Pazuik, a resident of New Hanover County, North Carolina, created the revocable trust at issue March 26, 1998. No copy of the original trust agreement is before the court; however, this is of no moment to the analysis following.



**September 12, 2008: Amendment to and restatement of the revocable trust**
**("September 12, 2008 Restatement")**

Twenty years after its inception, the revocable trust was amended and restated in its entirety on September 12, 2008. The September 12, 2008 Restatement is lodged on the docket at entry 16-11 at pages 1 - 37. It references Exhibits "A," "B," and "C." Exhibit A purports to be a list of the property of the revocable trust. This exhibit was not filed with the court. Exhibit B to the September 12, 2008 Restatement purports to identify individuals receiving specified distributions. There is no Exhibit B effective September 12, 2008 in the court's file.[3] Exhibit C purports to be a list of charitable organizations to receive distributions. This exhibit to the September 12, 2008 Restatement, bearing the same September 12, 2008 date, was made a part of the record.

Under the September 12, 2008 Restatement, once Pazuik died, the revocable trust's assets were to be distributed in three successive steps:

---

221, 224 n. 2 (4th Cir. 2005) (taking "judicial notice of the records of a court of record"). All exhibits relied upon by the court are attached to the complaint or a motion to dismiss and are integral to the complaint or are matters of public record. Additionally, no party challenges the authenticity of any of the exhibits relied upon by the court.

[3]     Exhibit B found at pages 34-36 of docket entry 16-11 is reflective of a later modification. Dated September 25, 2014, it identifies by name those who first will receive specified distributions, as directed by Article VI, Section 1(A) of the September 12, 2008 Restatement. Plaintiffs are among those named.

1.	Pursuant to Article VI, Section 1(A) of the September 12, 2008 Restatement, the trustee would distribute a portion of the trust's assets to individuals to be named in Exhibit B thereto;

2.	Pursuant to Article VI, Section 1(B) of the September 12, 2008 Restatement, the trustee would distribute another portion of the trust's assets to certain charities named in Exhibit C thereto; and

3.	Pursuant to Article VI, Section 2 of the September 12, 2008 Restatement, the trustee would distribute the remainder to plaintiffs and two others.

The September 12, 2008 Restatement additionally provided that "[a]t such time the initial Trustee [Paziuk] no longer serves as Trustee, and if the Grantor [Paziuk] has not, or cannot, act to appoint a successor trustee, then Anthony A. Saffo, Esq. and Bret Schardt shall become Trustees, and shall serve together as Co-Trustees."  (September 12, 2008 Restatement (DE 16-11) at 25).



**November 16, 2011:**  **Paziuk adjudicated incompetent**
**Guardians appointed including defendant Craige**

In 2011, Paziuk had a stroke. After the stroke, the General Court of Justice, Superior Court Division, for New Hanover County ("state court") appointed two guardians: one for Paziuk's person, LaVaughn Nesmith, and another for Paziuk's estate, defendant Craige.



**May 29, 2012:**  **Defendant Schardt renounces trusteeship**

On May 29, 2012, defendant Schardt filed with the state court renunciation of right to serve as a co-trustee of the revocable trust.  (See DE 66-1 ¶¶ 5, 7 ("Bret Schardt is an employee of RBC Wealth Management . . . .  That due to RBC's company policy Bret Schardt wishes to renounce his right to serve as a successor Co-Trustee of the Paziuk Trust."); id. ¶ 8 ("at no time since George

Paziuk was adjudicated incompetent did Bret Schardt ever accept his trusteeship over the Paziuk

Trust, nor perform any duties . . . as a trustee . . . .").



**June 15, 2012:** **Premarital agreement between Pazuik, with defendant Craige acting on Paziuk's behalf, and defendant Posey ("June 15, 2012 premarital agreement")**

In May 2012, defendant Craige petitioned the state court to authorize Paziuk's estate to pay

for the wedding of Paziuk to Posey. In the petition, defendant Craige also indicated that Paziuk

would have an attorney prepare a premarital agreement, which defendant Craige would sign on

behalf of Paziuk's estate. Defendant Craige wrote to plaintiff Katarzyna Zeinkiewicz May 25, 2012,

enclosing for her review the petition for disbursement and notice of hearing regarding the petition.

The state court granted the petition.

The June 15, 2012 premarital agreement incorporated the September 12, 2008 Restatement

and provided that the September 12, 2008 Restatement "shall take priority and control over any

rights and interests in property of PAZIUK which might otherwise become vested in [defendant

Posey] by reason of her marriage to PAZIUK." (June 15, 2012 premarital agreement (DE 16-14)

at 10-11; see also Compl. (DE 16) ¶¶ 27-28).

The premarital agreement additionally provided that "[n]either party shall hereafter secure

any credit card which the other party is authorized to use nor shall either party use or make changes

on any credit account in the other party's name, and neither party shall be liable in any manner for

debts created through the use of a credit card or charge account in the other party's name." (June

15, 2012 premarital agreement (DE 16-14) at 11; see also Compl. (DE 16) ¶ 31).



**<span style="color:red">January 31, 2013:</span>**  **Paziuk guardianship modified**

In January 2013, the guardianship of Paziuk's person was modified, restoring to Paziuk rights to make all decisions that would otherwise be made by a guardian of his person.  (See Jan. 31, 2013 order (DE 50-1)).  The court held that "Paziuk has recovered since the time of adjudication so that he can make decisions about and communicate his needs regarding all matters other than those regarding his estate."  (Id. at 3).  The order additionally provided defendant Craige would continue as guardian of the Paziuk estate.  (Id.).



**<span style="color:red">May 7, 2013:</span>** **Amendment to the revocable trust ("May 7, 2013 Amendment")**

On May 7, 2013, Paziuk amended the revocable trust, creating a marital trust.  (May 7, 2013 Amendment  (DE 16-11) at 38-44).  Changes made to the September 12, 2008 Restatement through the May 7, 2013 Amendment were made by George Paziuk at the time when he was adjudicated to be incompetent.  Under the May 7, 2013 Amendment, and a September 25, 2014 modification reflecting a fully executed Exhibit B thereto,[4] once Paziuk died, the trust's assets were to be distributed in four steps.

---

[4]      Just like there is no Exhibit B effective September 12, 2008 in the record, there is no Exhibit B effective May 7, 2013 in the court's file.  Plaintiffs express concern that the fully executed Exhibit B finally presented to them, dated September 25, 2014, providing for $1,500,000.00 in distributions to them, has somehow been altered to their detriment.  Distribution to defendant Schardt for $100,000.00 draws their concern.  Plaintiffs allege Exhibit B includes "suspicious changes" as does the May 7, 2013 Amendment establishing the marital trust.  (Compl. (DE 16) ¶ 20).

The first and second steps remain as sequenced in the September 12, 2008 Restatement. The third step previously described, where the trustee would distribute the remainder to plaintiffs and two others lost its order in the May 7, 2013 Amendment. This became the fourth and final step where the parties agree, after the first and second steps, the trustee must distribute $6,000,000.00 to the marital trust for defendant Posey before distributing any remainder to plaintiffs.

Defendant Schardt, defendant Saffo, who served as Paziuk's attorney, executor, and trustee of the Paziuk estate and trusts, and defendant Thompson, who drafted the May 7, 2013 Amendment, were aware Paziuk's competency had not been restored. Plaintiffs allege these defendants knew defendant Craige was a necessary party to any attempt to change the revocable trust and that defendant Craige as guardian had a duty to protect the assets of Paziuk. It is also alleged that defendant Craige intentionally was not notified concerning the May 7, 2013 Amendment.



**<span style="color:red">September 25, 2014:</span>  Exhibit B to the September 12, 2008 Restatement**

On September 25, 2014, Exhibit B, which identifies by name those who are to receive specified distributions, as directed by Article VI, Section 1(A) of the September 12, 2008 Restatement (and as not altered by the May 7, 2013 Amendment), apparently was modified. The exhibit bearing this date provides for cash distributions totaling in excess of $3,000,000.00 to 17 individuals.[5] Plaintiffs are to receive $1,500,00.00, to be distributed equally among them and two others not named as plaintiffs in the case. Defendant Schardt also is among those listed to receive a distribution, in his case, of the sum of $100,000.00.

---

[5]     While not among those provided a cash distribution, Posey is identified as receiving certain real property. Money to be paid to defendant Saffo went to him as trustee for Posey's daughter, for her use and benefit.

↓

<span style="color:red">**April 20, 2015:**</span>  **Paziuk died**

On April 20, 2015, Paziuk died.  Defendant Saffo, as trustee, began distributing the trust's assets.   Defendant Posey started to transfer money out of the marital trust.  On June 12, 2015, defendant Craige filed in state court the final account for the guardianship estate.

During a July 12, 2016 meeting with defendants Saffo and Thompson, plaintiff Radoslaw Zeglinski was informed of the May 7, 2013 Amendment.  He received a partial distribution from the estate.  Plaintiffs also appear to allege that defendant Posey accrued $22,497.95 in credit card debt after Paziuk's death, which was paid for by the Paziuk estate.  This is in alleged contravention of the June 15, 2012 premarital agreement.  Plaintiffs also allege that defendant Posey lied to Paziuk during his lifetime, stating his aunt had died and that he had no living relatives.  Plaintiffs contend, too, that defendant Posey was abusive to Paziuk during his lifetime.  On March 7, 2018, the state court granted motion made by plaintiffs' then attorney Lonnie Merritt ("Merritt"), wherein it was represented to the state court that plaintiffs sought order directing defendant Saffo to make distribution to plaintiffs and to close Paziuk's estate.

**DISCUSSION**

Plaintiffs seek the May 7, 2013 Amendment, which created the marital trust, to be declared void.  They also seek the $6,000,000.00 transferred to the marital trust to be returned and a constructive trust created on their behalf.  It appears they seek Exhibit B to the September 12, 2008 Restatement, dated September 25, 2014, to be declared void even though it provides for a $1,500,00.00 distribution in equal shares to them and two others, ostensibly because it also provides

9

for a $100,000.00 distribution to defendant Schardt.[6]  They also seek damages to be paid to each

plaintiff in the amount of $3,000,000.00 and request that "the Premarital Agreement along with all

Exhibits thereto and any other documents being held by the Clerk of Court should now be removed

from seal and become part of this proceeding in Federal Court," indicating one exhibit referenced

is the September 12, 2008 Restatement, presumably containing an Exhibit B effective on the same

date.  (Compl. (DE 16) ¶¶ 43, 51).

The court first takes up motions concerning defendants Craige and Schardt's pleadings

status.  Then it turns its attention to the motions to dismiss, where all defendants seek the court on

varying grounds to dismiss the case.

A.      Motions for Time Extensions to Respond to Plaintiffs' Complaint (DE 48, 57) in Address
        of Motions for Entry of Default (DE 42, 43)

Plaintiffs seek entry of default against defendants Craige and Schardt.  Under Rule 55(a),

entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is

sought has failed to plead or otherwise defend . . . ."  Fed. R. Civ. P. 55(a).  It is "axiomatic,"

however, that effective service of process on a defendant must be accomplished as a prerequisite for

entry of default against that defendant.  Maryland State Firemen's Ass'n v. Chaves, 166 F.R.D. 353,

354 (D. Md. 1996).

Individuals must be served in one of several ways: first, by "following state law for serving

a summons in an action brought in courts of general jurisdiction in the state where the district court

---

        [6]      Notwithstanding the instant request, plaintiffs rely on documentation which appears to show plaintiffs
have accepted at least some distributions owed to plaintiffs pursuant to the challenged Exhibit B.  (See Compl. (DE 16)
¶ 21 ("During meeting 07/12/2016 with [defendants Saffo and Thompson,] Radoslaw Zeglinski [received] partial
distribution"); DE 16-12 at 1 (receipt authorizing defendant Saffo to distribute $35,000.00 to plaintiff Radoslaw
Zeglinski against his share of the trust); see also DE 16-8 at 1 (January 25, 2016 letter from defendant Saffo to plaintiff
Katarzyna Zeinkiewicz seeking contact information of other plaintiffs and stating each plaintiff is to receive $202,380.95
under the terms of Paziuk's will and trust)).

is located or where service is made," Fed.R.Civ.P. 4(e)(1);[7] second, by delivering process to the individual personally, Fed.R.Civ.P. 4(e)(2)(A); third, by leaving process at their "dwelling or usual place of abode" with a person of suitable age and discretion who resides there, Fed.R.Civ.P. 4(e)(2)(B); and finally, process may be delivered to an agent authorized by appointment or law to receive service of process, Fed.R.Civ.P. 4(e)(2)(C).

Defendants Saffo and Thompson, together with Craige, attest that service has not been made in accordance with the above rules, notwithstanding plaintiffs' proofs of service indicating otherwise.[8]  (See Saffo Affidavit (DE 35-1)  ¶¶ 5-6 ("I received a copy of the Summons and Complaint in this matter by finding copies of the documents left unattended at the front door of my residence.  Though the Return of Service indicates that I was served personally by Linda Rice, I was not.  Nor was anyone else in my household served by Ms. Rice on my behalf."); Thompson Affidavit (DE 39-1) ¶¶ 6, 10 ("I received a copy of the Summons and Complaint in this matter by receiving copies of the documents left with the Receptionist at the law firm in which I work . . . [who] is not designated to accept service of process on my behalf"); Craige Affidavit (DE 50-3) ¶¶ 12, 16 ("a copy of the Summons and a partial copy of the Complaint in this matter were left with a legal assistant at the law firm in which I work . . . [who] is not designated to accept service of process on my behalf.").

---

[7]     As relevant here, under North Carolina state law, a plaintiff may serve an individual by delivering process to the individual personally or by leaving copies at their "dwelling or usual place of abode" with a person of suitable age and discretion who resides there, N.C. R. Civ. P. 4(j)(1)(a), or by delivery to an agent authorized by appointment or by law to receive service of process, N.C. R. Civ. P. 4(j)(1)(b).

[8]     Plaintiffs have filed sworn proofs of service as to each defendant, executed by a process server identified as Linda Rice ("Rice"), which avers that each above defendant was personally served by Rice except defendant Thompson, who it is alleged was served via authorized agent. (See DE 19 – DE 22; see also DE 23).  The proof of service form used by Rice is form AO 440 (Rev. 06/12) Summons in a Civil Action.  Plaintiffs state they "hire[d] certified company for service of process [and] [w]e believe that company have good experience in service of process." (DE 45 at 4).

In addition to protesting proper service, defendant Craige defends against plaintiffs' motion for entry of default with one seeking leave to respond also with reference to professional and personal distractions occurring at the time. His motion, filed March 21, 2019, refers to the immediate hiring of counsel when he realized his oversight. Defendant Craige seeks the court to excuse his delay and allow him opportunity to respond to plaintiffs' complaint out of time. Contemporaneous with filing of his motion, defendant Craige filed his motion to dismiss.

Defendant Schardt initially attested while he received documents relating to this lawsuit March 22, 2019, these did not include any summons or complaint, (see Schardt Affidavit (DE 57-1 ¶¶ 11, 14); however, it appears service was properly made on him April 11, 2019, (see Second Schardt Affidavit (DE 67)). Defendant Schardt argues good cause exists for extending time for him to respond to complaint where he immediately engaged representation upon receipt of documents related to this lawsuit, filed the instant motion for extension of time on March 28, 2019, and then filed his motion to dismiss on April 17, 2019.[9]

Under these unique circumstances, where international plaintiffs proceeding pro se have made substantial effort to effect service properly, although falling short, and where defendants Craige and Schardt, together with the other defendants, having actual knowledge of this litigation, have moved also on substantive grounds for dismissal, the just and speedy determination of this action is appropriately achieved by:

> DENYING plaintiffs' motions for entry of default as to defendants Craige and Schardt (DE 42, 43);

---

[9] Defendant Schardt additionally notes the complaint incorrectly references him by the name "Bred Schard" or "Bred Schard Co." (DE 58 at 3).

ALLOWING defendant Craige's motion for leave to file response to complaint (DE 48), in the form of motion to dismiss, deemed timely filed as of March 21, 2019;

ALLOWING defendant Schardt's motion for extension of time to file answer (DE 57), with time being extended through and including April 18, 2019, rendering defendant Schardt's motion to dismiss timely filed; and

RELIEVING plaintiffs of any obligation to cure any deficiency in service with respect to defendant Saffo, who for reasons discussed below, together with defendant Posey (who makes no complaint about any deficient service against her), will remain defendants in this action.

B.      Defendants' Motions to Dismiss (DE 34, DE 38, DE 40, DE 49, DE 65)

1.      Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Courts must liberally construe pro se complaints, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, "[t]he 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.

Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs. for the City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990).

2.    Analysis

Plaintiffs argue they have alleged this case involves "fraudulent action against the Estate of late George Paziuk" as well as "professional misconduct and misdemeanor relating to guardianship abuse and elder abuse and exploitation of incompetent person . . . ." (DE 45 at 1). Plaintiffs additionally argue that because they were not aware of the May 7, 2013 Amendment until July 2016, the statute of limitations on their claims did not begin to accrue until that time.

Liberally construing plaintiffs' complaint, the court addresses the viability of the following claims: breach of fiduciary duty, undue influence, reformation of a revocable trust, fraud, and professional misconduct.

a.    Breach of Fiduciary Duty

In order "[f]or a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." Green v. Freeman, 367 N.C. 136, 141 (2013) (citation omitted). "A fiduciary relationship may arise when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Id. (citation omitted).

The trustee of a revocable testamentary trust is a fiduciary. N.C. Gen. Stat. § 32–2 ("fiduciary" includes a trustee under any trust); see also King v. Bryant, 369 N.C. 451, 464 (2017) ("A number of relationships have been held to be inherently fiduciary, including the relationships between . . . trustee and beneficiary . . . ."). As a fiduciary, the trustee is required by statute to "observe the standard of judgment and care under the circumstances then prevailing, which an

ordinarily prudent person of discretion and intelligence, who is a fiduciary of the property of others,

would observe as such fiduciary [.]"  N.C. Gen. Stat. § 32–71.

Additionally, a trustee has the legal duty to communicate to beneficiaries certain information

under certain circumstances concerning the state of the trust:

> The trustee is under a duty to do all of the following: (1) Provide reasonably complete and accurate information as to the nature and amount of the trust property, at reasonable intervals, to any qualified beneficiary who is a distributee or permissible distributee of trust income or principal. (2) In response to a reasonable request of any qualified beneficiary: a. Provide a copy of the trust instrument.  b. Provide reasonably complete and accurate information as to the nature and amount of the trust property . . . .

N.C. Gen. Stat.§ 36C-8-813.

Because pledging a fiduciary duty to a trust is most similar to the acceptance of a contract,

the North Carolina Supreme Court has determined that the statute of limitations applicable to an

action for breach of such a fiduciary duty is the same as that applicable to an action for breach of

contract, which is three years.  Tyson v. North Carolina National Bank, 305 N.C. 136, 141-42

(1982).  Although not addressed by the North Carolina Supreme Court, the North Carolina Court

of Appeals as well as federal courts applying North Carolina law have held that the statute of

limitations for a breach of fiduciary duty claim begins to run when the aggrieved party knew or

should have known of the facts giving rise to the claim.  See, e.g., Toomer v. Branch Banking & Tr.

Co., 171 N.C. App. 58, 69 (2005); Hetzel v. JPMorgan Chase Bank, N.A., No. 4:13-CV-236-BO,

2014 WL 7336863, at *3 (E.D.N.C. Dec. 22, 2014); Catlin Specialty Ins. Co. v. Tegol, Inc., No.

314CV00607GCMDCK, 2017 WL 252290, at *10 (W.D.N.C. Jan. 19, 2017) (collecting cases).

Here, plaintiffs have alleged a claim for breach of fiduciary duty against defendant Saffo,

where plaintiffs have alleged that 1) defendant Saffo was the trustee of the revocable trust to which

plaintiffs were beneficiaries, 2) defendant Saffo breached his fiduciary duty to plaintiffs by allowing Paziuk to amend the revocable trust when Paziuk had been adjudicated incompetent and by failing to communicate with plaintiffs regarding the state of the trust, and 3) plaintiffs did not know nor could have known of the alleged breach until they were informed of the May 7, 2013 Amendment at the July 12, 2016 meeting. See, e.g., Fortune v. First Union Nat. Bank, 323 N.C. 146, 149 (1988) (reversing dismissal of breach of fiduciary duty claim, holding "[w]e see no reason why a beneficiary may not sue an executor or trustee for damages if the executor or trustee has mismanaged the property he holds in a fiduciary capacity. We believe that a beneficiary who has been damaged by the negligence of a fiduciary should have this remedy in addition to any other remedy he may have.").

Plaintiffs have not alleged any other defendant owed plaintiffs a fiduciary duty. Defendant Posey, as wife to Paziuk, and defendant Schardt, as beneficiary under the revocable trust, owed no such duty to plaintiffs. Although plaintiffs have named defendant Schardt as a "co-trustee of George Paziuk Revocable Trust," defendant Schardt has submitted to the court his renunciation of right to serve as a co-trustee of the revocable trust, filed in state court, stating he has never acted as trustee of the revocable trust, of which the court may take judicial notice. (See DE 58 at 2 n.1; DE 66 at 6; DE 66-1 at 3 ("at no time since George Paziuk was adjudicated incompetent did Bret Schardt ever accept his trusteeship over the Paziuk Trust, nor perform any duties, taken any action, or assert any power or authority, as a trustee or other fiduciary with respect to the Paziuk Trust")); see Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239-40 (4th Cir. 1989) (citing 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106 (1977)) (a court may take judicial notice of public records such as court documents and, in fact, "the most frequent use of judicial notice of

16

ascertainable facts is in noticing the content of court records"); State v. Thompson, 349 N.C. 483, 497 (1998) (taking judicial notice "of the public records of other courts within the state judicial system"). Because defendant Schardt never acted as co-trustee of the revocable trust, he owes no fiduciary duty to plaintiffs in that capacity.

Plaintiffs allege defendant Thompson, as attorney for Pazuik who drafted the May 7, 2013 Amendment, and defendant Craige, as guardian of the Pazuik estate during Pazuik's lifetime, owed a duty to Pazuik, but plaintiffs do not allege either owed a duty to plaintiffs. More specifically regarding defendant Craige, plaintiffs allege defendant "Craige as Guardian of the Estate should protect all estate assets of ward George Pazuik" and that defendants Saffo, Thompson, and Schardt "knew that Defendant Lawrence S. Craig[e] was a necessary party to any attempt to change or modify the Revocable Trust." (Compl. (DE 16) ¶¶ 45-46). Defendant Craige argues in response that "[t]o the extent that Plaintiffs' Complaint alleges that Defendant Craige had a duty to monitor Mr. Pazuik's trust and prevent or approve modifications thereto, such duties are simply beyond the scope of an appointed Guardian of the Estate pursuant to N.C. Gen. Stat. Chapter 35A." (DE 50 at 9).

In carrying out the responsibilities of a guardian of an estate, a guardian may "petition the court for approval of the exercise of any of the following powers with respect to a revocable trust that the ward, if competent, could exercise as settlor of the revocable trust: a. Revocation of the trust. b. Amendment of the trust. c. Additions to the trust . . . ."). N.C. Gen. Stat. § 35A-1251(24). However, a guardian of the estate also "has the power to perform in a reasonable and prudent manner every act that a reasonable and prudent person would perform incident to the collection, preservation, management, and use of the ward's estate to accomplish the desired result of

administering the ward's estate legally and in the ward's best interest . . . ." Id. § 35A-1251. Such power includes the power to not act.

Here, there is no indication that it was not in Pazuik's best interest for defendant Saffo, as trustee of the revocable trust, to administer the trust, and defendant Craige, as guardian of the estate, to administer the remaining estate, consistent with the direction of both the terms of the revocable trust and the state court order regarding defendant Craige's guardianship. (See Jan. 31, 2013 order (DE 50-1) at 5 ("Mr. Craige, in his capacity as guardian of the estate, and Mr. Paziuk shall make arrangements that are mutually agreeable to them regarding the possession and use of the debit card for day-to-day expenses incurred by Mr. Paziuk for himself and his household. Mr. Paziuk shall provide receipts or written verification to Mr. Craige' office on a monthly basis documenting all debit card expenditures."); id. ("Mr. Craige, in his capacity as guardian of the estate, shall have the authority to enter into and execute caregiver agreements in accordance with this Order on behalf of Mr. Paziuk and pay costs associated with same from Mr. Paziuk's estate)). Also, plaintiffs have not alleged that defendant Craige, in his capacity as guardian of the estate, engaged in any mismanagement of the estate or in any other wrongdoing.

Therefore, plaintiffs' claim for breach of fiduciary duty is allowed to proceed against defendant Saffo only.

b. Undue Influence

The North Carolina Supreme Court has defined undue influence as "a fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result." In re Estate of Loftin, 285 N.C. 717, 722 (1974). Typically, the real party in interest in cases of fraud and undue influence seeking to set aside

conveyances is the person against whom the actions were taken.  See Holt v. Holt, 232 N.C. 497,

501 (1950).  However, if the person against whom the actions were taken dies but the cause of action

still exists, "the right [to sue] passes to the heirs in case of intestacy and to the devisees in case the

grantor leaves a will."  Id. at 502 (internal citations omitted).

The North Carolina Supreme Court has listed the following factors as those probative on the

issue of undue influence in the context of formation of a will:

1.  Old age and physical and mental weakness;
2.  that the person signing the paper is in the home of the beneficiary and subject
    to his constant association and supervision;
3.  that others have little or no opportunity to see him;
4.  that the will is different from and revokes a prior will;
5.  that it is made in favor of one with whom there are no ties of blood;
6.  that it disinherits the natural objects of his bounty;
7.  that the beneficiary has procured its execution.

Matter of Andrews' Will, 299 N.C. 52, 55 (1980) (citation omitted); see also N.C. Gen. Stat. §

36C-6-601 ("The capacity required to create, amend, revoke, or add property to a revocable trust,

or to direct the actions of the trustee of a revocable trust, is the same as that required to make a

will.").

"[A]ny evidence showing an opportunity and disposition to exert undue influence, the degree

of susceptibility of [the] testator to undue influence, and a result which indicates that undue

influence has been exerted is generally relevant and important."  In re Will of Jones, 362 N.C. 569,

576 (2008) (citation omitted) (discussing difficulty of assessing Andrews factors where the claim

of undue influence is against a spouse).  Additionally, the mental condition of a testator at the time

he or she makes a will or codicil is "'perhaps, the strongest factor leading to the answer to the [fraud

and undue influence] issue.'"  In re Will of Ricks, 292 N.C. 28, 37–38 (1977) (quoting Goins v.

McLoud, 231 N.C. 655, 658 (1950)).

Regarding competency, the North Carolina Supreme Court has held as follows:

> Where a person has been adjudged incompetent from want of understanding to manage his affairs, by reason of physical and mental weakness on account of old age, disease or like infirmities, and the Court has appointed a guardian, and not a trustee, the ward is conclusively presumed to lack mental capacity to manage his affairs, insofar as parties and privies to the guardianship proceedings are concerned; and, while not conclusive as to others, it is presumptive proof of the mental incapacity of the ward, and this presumption continues unless rebutted in a proper proceedings.

Sutton v. Sutton, 222 N.C. 274, 274 (1942).

Liberally construing plaintiffs' complaint, plaintiffs have sufficiently alleged a claim against defendant Posey for undue influence where plaintiffs have alleged that at the time of entering into the May 7, 2013 Amendment, Paziuk had been adjudicated incompetent to handle his estate; the May 7, 2013 Amendment reallocated $6,000,000.00 from the earlier iteration of the trust to be distributed to defendant Posey; and that at some point during Paziuk's lifetime, defendant Posey lied to and abused Paziuk, including not allowing him to speak to his relatives. See In re Will of Jones, 362 N.C. at 578-81 (reversing grant of summary judgment where "Mr. Jones was seventy-six years old, ill with cancer, and by many accounts confused, in pain, significantly debilitated, and nearly entirely dependent on his wife," a reasonable jury could infer "Mrs. Jones was deliberately isolating Mr. Jones," and evidence was presented "that the September Will differed significantly from Mr. Jones's longtime estate plans").[10]

---

[10] Plaintiffs also allege that defendant Posey accrued $22,497.95 in credit card debt after Paziuk's death, which was paid for by the Paziuk estate, presumably inconsistent with the terms of the June 15, 2012 premarital agreement. (Compl. (DE 16) ¶ 31; see also DE 16-15). Plaintiffs argue a "[c]ommon example of financial abuse of George Paziuk was usage his credit card after his death." (DE 45 at 2). However, plaintiffs do not make clear what claim they bring that is supported by this allegation nor against whom, and it appears this claim, assuming such a claim exists, would be one that would be brought on behalf of the Paziuk estate. Under North Carolina law, the right to sue on an estate's behalf exists only in the decedent's personal representative. N.C. Gen. Stat. § 28A-18-1(a).

Plaintiffs have not alleged a claim for undue influence against any other defendant. Therefore, plaintiffs' claim for undue influence is allowed to proceed against defendant Posey only.

### c. Reformation of a Revocable Trust

Under North Carolina law, plaintiffs have three years from the date of the settlor's death to challenge the validity of a revocable trust. See N.C. Gen. Stat. § 36C-6-604(a)(1) ("A person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earlier of . . . [t]hree years after the settlor's death."). Thus, plaintiffs had three years from the date of Paziuk's death, April 20, 2015, to challenge the May 7, 2013 Amendment. Plaintiffs initiated the present action on June 26, 2018. Thus, any claim plaintiffs may have had for reformation of a revocable trust is barred by the statute of limitations.

### d. Fraud

There are two types of fraud, actual and constructive. Watts v. Cumberland County Hosp. System, 317 N.C. 110, 115 (1986). The well-established elements of actual fraud are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Forbis v. Neal, 361 N.C. 519, 526–27 (2007) (citation omitted). Furthermore, in order for a party's silence or omission to be fraud, defendant must have a legal duty to communicate that information to the plaintiff. Setzer v. Old Republic Life Ins. Co., 257 N.C. 396, 398 (1962); see also Breeden v. Richmond Comm. College, 171 F.R.D. 189, 195 (M.D.N.C. 1997).

"In order to maintain a claim for constructive fraud, plaintiffs must show that they and defendants were in a 'relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his

position of trust to the hurt of plaintiff.'" <u>Barger v. McCoy Hillard & Parks</u>, 346 N.C. 650, 666 (1997) (citations omitted). "Implicit in the requirement that a defendant '[take] advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself." <u>Id.</u> (citation omitted).

Rule 9(b) of the Federal Rules of Civil Procedure is also applicable. Under this Rule, claims for fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) applies to all allegations which bear "the substance of fraud." <u>Cozzarelli v. Inspire Pharm. Inc.</u>, 549 F.3d 618, 629 (4th Cir. 2008).

Plaintiffs have failed to allege any claim based in fraud against defendants Thompson, Craige, or Schardt, where plaintiffs allege no false representation, no concealment of material fact, nor any allegations these defendants took advantage of Paziuk for their own gain.

The only false representation or concealment of material fact alleged by plaintiffs as to defendant Saffo is that defendant Saffo, as trustee of the revocable trust, failed to inform plaintiffs that the trust had been amended pursuant to the May 7, 2013 Amendment, until the July 12, 2016 meeting, over a year after Paziuk died. As stated above, defendant Saffo had the legal duty to communicate to beneficiaries certain information under certain circumstances concerning the state of the trust. However, plaintiffs do not allege that this failure to inform was reasonably calculated to deceive or was done with the intent to deceive, and it appears at most plaintiffs allege that defendant Saffo acted negligently in his duty to inform. An allegation of failure to inform without more is insufficient to state a claim for fraud under Rule 9(b).[11] Additionally, there is no allegation

---

[11] Plaintiffs allege that defendant Saffo intentionally did not notify defendant Craige, guardian of the Paziuk estate, as to the May 7, 2013 Amendment. (Compl. (DE 16) ¶¶ 30, 44, 47). However, plaintiffs have not alleged that defendant Saffo, as sole trustee of the revocable trust, was under any obligation to do so.

that defendant Saffo took advantage of his position as trustee of the revocable trust in order to benefit himself. Therefore, plaintiffs have failed to state a claim for actual or constructive fraud against defendant Saffo.

The only false representation alleged by plaintiffs as to defendant Posey is that she lied to Paziuk, not to plaintiffs, and told Pazuik that his aunt had died and that he had no living relatives. Assuming, based on these allegations, that plaintiffs are asserting a claim for fraud against defendant Posey, there is no indication these alleged lies were reasonably calculated to deceive or did indeed deceive anyone, including Paziuk, where plaintiffs thereafter remained beneficiaries under the May 7, 2013 Amendment until Paziuk's death.[12]

Plaintiffs additionally state as follows: "Forging signatures (signed [May 7, 2013 Amendment], about providing 6,000,000.00 from Paziuk Trust to Marital Trust is very similar to Matthew Thomson sign)." (See DE 45 at 2). Here, it is possible that plaintiffs are making allegations of fraud against defendant Thompson, that he illegally forged Paziuk's signature found on the May 7, 2013 Amendment. (See May 7, 2013 Amendment (DE 16-11) at 42).

These ambiguous assertions, found in plaintiffs' response in opposition to certain defendants' motions to dismiss, do not arise to the level of a claim and are inconsistent with plaintiffs' allegations in their complaint. (See Compl. (DE 16) ¶ 30 ("Plaintiffs, on information and belief, allege that on May 7, 2013 George Paziuk - an incompetent person - illegally attempted to amend or modify the Court approved, and Court ordered, Premarital Agreement . . . [and] executed a document," the May 7, 2013 Amendment)); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (Principles requiring generous construction of pro se complaints are not,

---

[12]    Because no duty of trust and confidence existed between plaintiffs and defendant Posey, plaintiffs fail to state a claim for constructive fraud against defendant Posey. See Rhodes v. Jones, 232 N.C. 547, 549 (1950).

however, without limits . . . Even in the case of pro se litigants, [district judges] cannot be expected to construct full blown claims from sentence fragments, which is essentially what Beaudett is seeking here.").

Therefore, plaintiffs have failed to state a claim against any defendant for fraud.

e.      Professional Misconduct

As stated above, plaintiffs have argued this case involves "professional misconduct and misdemeanor relating to guardianship abuse and elder abuse and exploitation of incompetent person . . . ." (DE 45 at 1). However, plaintiffs do not have a professional relationship with any defendant such that plaintiffs can bring a professional misconduct claim. As stated by the North Carolina Supreme Court:

> By its plain terms, this statute applies to the rendering of "professional services." The term "professional services" refers to "those services where a professional relationship exists between plaintiff and defendant—such as a physician-patient or attorney-client relationship." Doe v. American Nat'l Red Cross, 798 F.Supp. 301, 306 (E.D.N.C.1992) . . . Chicago Title Ins. Co. v. Holt, 36 N.C.App. 284, 288, 244 S.E.2d 177, 180 (1978) (holding that claims of attorney malpractice may be brought only by those who are in privity of contract with the attorney) . . . .

Barger v. McCoy Hillard & Parks, 346 N.C. 650, 665 (1997).

To the extent plaintiffs seek to bring a claim for professional misconduct on behalf of Pazuik's estate, plaintiffs lack standing to do so. See N.C. Gen. Stat. § 28A-18-1 ("Upon the death of any person, all demands whatsoever, and rights to prosecute or defend any action or special proceeding, existing in favor of or against such person, except as provided in subsection (b) hereof, shall survive to and against the personal representative or collector of the person's estate.").[13]

---

[13]      It appears that plaintiffs additionally allege that the Paziuk estate was closed without their permission; however, plaintiffs make these allegations concerning people not parties to the present case, including plaintiffs' own former attorney Merritt. (See Compl. (DE 16) ¶ 37). Accordingly, the court does not address this issue.

Therefore, plaintiffs' have failed to state a claim against any defendant for professional misconduct.

## CONCLUSION

For the foregoing reasons, plaintiffs' motions for entry of default as to defendants Craige (DE 42) and Schardt (DE 43) are DENIED.  Defendant Craige's motion for leave to file response to complaint (DE 48) is ALLOWED as is defendant Schardt's motion for extension of time to file answer (DE 57).

Defendant Saffo's motion to dismiss (DE 34) is GRANTED IN PART and DENIED IN PART.  Defendant Thompson's motion to dismiss (DE 38) is GRANTED.  Defendant Posey's motion to dismiss (DE 40) is GRANTED IN PART and DENIED IN PART.  Defendant Craige's motion to dismiss (DE 49) is GRANTED.  Defendant Schardt's motion to dismiss (DE 65) is GRANTED.

In accordance with the court's order, the following claims are allowed to proceed:

1.    Claim for breach of fiduciary duty against defendant Saffo; and

2.    Claim for undue influence against defendant Posey.

All other claims are dismissed as set forth herein.  When defendants Saffo and Posey have been heard in answer, in accordance with the Federal Rules of Civil Procedure, the court's stay of discovery automatically shall be LIFTED, and the court's initial order regarding planning and scheduling will follow.[14]

---

[14]    As noted, plaintiffs seek documents, allegedly not in plaintiffs' possession and currently under seal in state court, to be made a part of the current proceedings, namely the June 15, 2012 premarital agreement and all attached exhibits. (See Compl. (DE 16) ¶ 43).  This is the stuff of discovery.  The court's initial order regarding planning and scheduling will instruct the parties to confer and report on a proposed plan for discovery in accordance with Rule 26(f).  The parties' report to the court shall include consideration of this discovery issue.

SO ORDERED, this the 24th day of May, 2019.

LOUISE W. FLANAGAN
United States District Judge